# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Clarence S.,**
**Petitioner Below, Petitioner**

**FILED**

November 21, 2014
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)   No. 14-0356** (Fayette County 13-C-311)

**David Ballard, Warden, Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Clarence S.,[1] appearing *pro se*, appeals the order of the Circuit Court of Fayette County, entered March 4, 2014, that summarily denied his petition for writ of habeas corpus. Respondent warden, by counsel Laura Young, filed a response, and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 8, 2007, petitioner was indicted on five counts of sexual assault in the second degree in violation of West Virginia Code § 61-8B-4, and five counts of sexual abuse by a parent, guardian, or custodian in violation of West Virginia Code § 61-8D-5. The charges concerned K.W., the twelve-year-old daughter of petitioner's girlfriend. At a November 2, 2007, plea hearing, petitioner admitted that he was K.W.'s custodian at the time of his offenses. Petitioner entered a guilty plea to three counts of sexual abuse by a parent, guardian, or custodian. In exchange, the State dismissed the remaining counts of the indictment. In offering his plea to the circuit court, petitioner admitted that he had engaged in sexual relations with K.W. by (1) performing oral sex on K.W.; (2) having K.W. perform oral sex on him; and (3) engaging in vaginal intercourse with K.W. Petitioner testified that, although he understood that K.W. was not old enough to consent to the acts, he did not forcibly compel her to participate in them. Petitioner also indicated that he was satisfied with the performance of his trial counsel. Petitioner did not object when counsel informed the circuit court that counsel had received the State's discovery and had discussed it with petitioner.

---

[1] Consistent with our practice in cases involving sensitive facts, we use only petitioner's first name and last initial, and identify the minor victim only by her initials. *See State ex rel. W.Va. Dept. of Human Services v. Cheryl M.*, 177 W.Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987).

1

On December 19, 2007, the circuit court sentenced petitioner to three consecutive terms of ten to twenty years in prison. The circuit court noted that, while petitioner expressed remorse at his plea hearing and his intake interview with his probation officer, he stated to the evaluator at his psychological evaluation that the charges against him were false and that K.W.'s mother had made up the story. Also, the evaluator felt that petitioner deliberately attempted to deceive the evaluator by withholding or distorting information. (Petitioner failed to disclose that he was living with a brother, who was a registered sex offender.) The circuit court noted that the final recommendation of the evaluation was that petitioner's behavior led to a very poor prognosis for change or for treatment to be effective in any meaningful way. Accordingly, the circuit court denied petitioner's motion to be placed on probation in lieu of his prison sentences, finding that it was not a viable option under the circumstances.

In his direct appeal of his conviction to this Court, petitioner argued that his three consecutive prison terms were unconstitutionally disproportionate to the severity of his offenses. On June 22, 2010, this Court refused petitioner's appeal.

On December 2, 2013, petitioner filed a petition for writ of habeas corpus raising the following issues: (1) counsel provided ineffective assistance because counsel (a) failed to adequately investigate petitioner's case, and (b) gave erroneous advice as to whether petitioner should accept a plea agreement; (2) medical records that were part of the State's discovery constituted "newly discovered evidence" because, contrary to what was stated at the plea hearing, counsel did not discuss these records with petitioner;[2] (3) K.W. was improperly coached by her mother; (4) the circuit court erred in giving petitioner a harsher sentence merely because his brother was a registered sex offender; and (5) the indictment contained illegal counts because petitioner was not K.W.'s custodian at the time of the offenses. On March 4, 2014, the circuit court summarily denied habeas relief in a comprehensive forty-four page order that refuted every issue petitioner raised in the petition. In denying relief, the circuit court specifically found that the petition, as filed, "and the record in this matter, are sufficient for the Court to conduct a fair and thorough adjudication of the matters raised without an evidentiary hearing and without the appointment of counsel[.]"

Petitioner now appeals the circuit court's March 4, 2014, order that summarily denied his habeas petition. We review such an order petition under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the
>
> underlying factual findings under a clearly erroneous standard; and questions of

---

[2] Petitioner claimed that two answers K.W. gave on the sexual assault investigation form, combined with the statement K.W. provided law enforcement, demonstrated that petitioner did not engage her to perform oral sex despite the fact that, at the November 2, 2007, plea hearing, petitioner had admitted that K.W. performed oral sex on him and that he performed oral sex on her.

2

law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

On appeal, petitioner asserts that, without an evidentiary hearing and appointment of counsel, the circuit court was not capable of adequately adjudicating his petition because he raised the following issues: (1) ineffective assistance of counsel; (2) "newly discovered evidence" in the form of medical records that, according to petitioner, he did not learn about until after his guilty pleas; (3) the coaching of K.W. by her mother; (4) the impermissible factor that, according to petitioner, the circuit court utilized during petitioner's sentencing;[3] and (5) the illegality of the indictment counts because petitioner was not K.W.'s custodian at the time of the offenses. Respondent warden counters that, pursuant to Syllabus Point 1 of *Perdue v. Coiner,* 156 W.Va. 467, 194 S.E.2d 657 (1973), "[a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." We agree and conclude that the circuit court did not abuse its discretion in summarily denying the petition.

Having reviewed the circuit court's "Order Summarily Denying and Dismissing Petition," entered March 4, 2014, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.[4]

For the foregoing reasons, we affirm.

Affirmed.

---

[3] Petitioner refers to the fact that his brother was a registered sex offender. Given that petitioner was living with this brother, respondent warden does not concede that this would have been an impermissible factor for the circuit court to have considered during sentencing. In any case, what disturbed the circuit court was not the fact that petitioner's brother was a sex offender, but that petitioner failed to disclose that he was living with his brother during his psychological evaluation. In his reply, petitioner, for the first time, asserts that it is factually inaccurate that he was living with this brother. Rather, petitioner now states that he was living with a different brother, who was not a registered sex offender, and that counsel should have moved the circuit court to correct the presentence report as to this issue. We decline to consider this argument because the record does not support petitioner's assertion that he was living with a different brother. *See* Rule 10(c)(7), W.V.R.A.P. ("The Court may disregard errors that are not adequately supported by specific references to the record on appeal.").

[4] Certain names have been redacted. *See* fn. 1.

**ISSUED:**   November 21, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

14-0536 ✓

# IN THE CIRCUIT COURT OF FAYETTE COUNTY, WEST VIRGINIA

**CLARENCE**                                            **Petitioner,**

**v.**                                         **Case No.: 13-C-311**
                                                 **Judge Paul M. Blake, Jr.**

**DAVID BALLARD, Warden,**
**Mount Olive Correctional Complex,**                       **Respondent.**

## ORDER SUMMARILY
## DENYING AND DISMISSING PETITION

This matter is before the Court on a *Petition for Writ of Habeas Corpus Ad Subjiciendum* filed by Petitioner, Clarence _____ *pro se*, on December 2, 2013. The Court has carefully reviewed the relevant portions of the record, the filings in this matter, and the relevant legal authority. Based upon the following findings of fact and conclusions of law, the Court is of the opinion that the Petitioner is entitled to no relief and the *Petition for Writ of Habeas Corpus Ad Subjiciendum* should be, and hereby is, **SUMMARILY DENIED** and **DISMISSED**. Pursuant to Section 53-4A-7(c) of the *West Virginia Code* and Rule 9(c) of the *West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings*, the Court enters this comprehensive order summarily dismissing the matter and removing it from the Court's active docket.

## STATEMENT OF THE CASE

On December 10, 2006, Trooper K.D. Horrocks responded to Plateau Medical Center on a reported sexual assault to a twelve (12) year old juvenile. Upon arrival the trooper spoke to the victim's mother _____ who advised that her (12) year old daughter, _____ had disclosed to her that Clarence _____ forty-two year old boyfriend, had

-1-

sexually assaulted her. A sex crime kit was completed c        and an investigation into the allegation was conducted.

On May 8, 2007, a Fayette County Grand Jury returned an indictment charging Petitioner with five (5) counts of sexual assault in the second degree and five (5) counts of sexual abuse by a parent, guardian, or custodian. Trial was scheduled to begin on August 14, 2007. On August 8, 2007, based upon good cause and the agreement of the parties, a *Continuance Order* was entered continuing the matter to November 2, 2007, to permit the completion of DNA forensic analysis and comparison on semen that was discovered in the sex crime kit that was conducted on the victim. On October 17, 2007, a copy of the West Virginia State Police Forensic Lab report dated October 16, 2007, was provided to the Petitioner.

On November 2, 2007, the Petitioner, entered into a plea agreement with the State, wherein the Petitioner pled guilty to three (3) counts of sexual abuse by a parent, guardian, or custodian and the remaining seven (7) charges were dismissed pursuant to the plea. After the Court conducted an extensive Rule 11 colloquy and the Petitioner provided a factual foundation for the guilty plea, the Court accepted and entered the plea. The Court ordered that a pre-sentence investigation and sex offender evaluation be completed prior to sentencing in the matter. On December 19, 2007, the Petitioner was sentenced to the West Virginia Penitentiary for an indeterminate period of not less than ten (10) nor more than twenty (20) years and fined Five Hundred Dollars ($500.00) for each of the three (3) counts of sexual abuse by a parent, guardian, or custodian. The Court further ordered that the sentences be served consecutively.

## RELEVANT PROCEDURAL HISTORY FOLLOWING CONVICTION AND GENERAL

## FINDINGS OF FACT

1. On the day of trial, November 2, 2007, the Petitioner entered a plea of guilty to three (3) felony counts of sexual abuse by a parent, guardian, or custodian as charged in count two (2), Four (4), and Six (6) of Indictment No. 07-F-100. The remaining seven (7) felony counts contained in Indictment No. 07-F-100 were dismissed with prejudice pursuant to the entry of the plea of guilty.

2. On December 19, 2007, the Petitioner was sentenced, pursuant to his plea of guilty, to three (3) felony counts of sexual abuse by a parent, guardian, or custodian as charged in count two (2), Four (4), and Six (6) of Indictment No. 07-F-100, to the West Virginia Penitentiary for an indeterminate period of not less than ten (10) nor more than twenty (20) years and fined Five Hundred Dollars ($500.00) for each of the three counts. The Court further ordered that the sentences be served consecutively.

3. On January 9, 2008, the Petitioner, *pro se*, filed a *Motion For Reconsideration Of Sentence.*

4. On January 11, 2008, the Court entered an *Order Denying Request For Reconsideration Of Sentence.*

5. By letter to counsel, Gerald Hayden, Esq. (referred to hereinafter as *"Plea Counsel"*), dated April 27, 2009, and filed with the Court on June 30, 2009, the Petitioner requested copies of all documents contained in the file of case No. 07-F-100. The letter stated, in pertinent part, "I am planning to file a *pro se* petition for a state writ of habeas corpus, but find myself with none of the documents regarding the above-styled case (due to my

-3-

recent transfer to Mount Olive.) . . . I am asking you to surrender 'papers and property' to which I am entitled, pursuant to Rule 1.16(d) of the *West Virginia Rules of Professional Conduct*."

6. By letter to *Plea Counsel* dated June 29, 2009, and filed with the Court on June 30, 2009, the Petitioner acknowledged receipt of the items, except for transcripts. In pertinent part, the letter stated, "On April 27, 2009, I sent a letter to you (attached) requesting copies of documents (motions, orders, plea bargain, transcripts, discovery, etc.) in my file for the above-styled case. You responded promptly, but apparently you did not have my transcripts since they were not included in what you sent me."

7. On August 27, 2009, the Petitioner, *pro se*, filed a *Motion to Formally Resentence Defendant for Purpose of Appeal.*

8. On August 31, 2009, the Court entered an *Order Denying Motion To Formally Re-Sentence Defendant For Purpose Of Appeal.*

9. On September 17, 2009, the Petitioner, *pro se*, filed in the West Virginia Supreme Court of Appeals, an *Original Jurisdiction Petition For A Writ Of Habeas Corpus.* The Supreme Court entered an order in the matter of *State of West Virginia ex rel. Clarence Smith v. David Ballard*, No. 091423, on November 12, 2009, directing the Honorable Paul Blake, Judge of the Circuit Court of Fayette County, "to appoint an attorney to the [P]etitioner and to resentence [P]etitioner for purposes of appeal" and dismissing the matter from the Supreme Court of Appeals's docket.

10. On November 20, 2009, the Court entered an *Order Resentencing Defendant And Appointing Appellate Counsel*, wherein the Petitioner was re-sentenced to the West

Virginia Penitentiary for an indeterminate period of not less than ten (10) nor more than twenty (20) years and assessed a fine in the amount of Five Hundred Dollars ($500.00) for each of three counts of sexual abuse by a parent, guardian, or custodian as charged in Count Two, Four, and Six of the Indictment No. 07-F-100. The Court further ordered that the sentences be served consecutively. The Court also appointed Anthony N. Ciliberti, Jr., Esq. (referred to hereinafter as *Appellate Counsel*), to represent the Petitioner for the purposes of his appeal of his conviction and/or sentencing in the matter.

11. On December 21, 2009, the Petitioner, by and through *Appellate Counsel*, filed a *Notice Of Intent To Appeal*.

12. On March 25, 2010, the Petitioner, by and through *Appellate Counsel*, filed a *Petition For Appeal* with the West Virginia Supreme Court of Appeals, wherein the Petitioner alleged that "[t]he Court committed error in sentencing the defendant to three, consecutive ten to twenty year sentences as the aforementioned punishment amounts to cruel and unusual punishment and such punishment is further disproportionate to the offenses committed."

13. On June 22, 2010, the West Virginia Supreme Court of Appeals entered an order refusing the *Petition For Appeal*.

14. On October 15, 2010, the Petitioner, by and through *Appellate Counsel*, filed a *Motion For Reduction Of Sentence*.

15. On October 19, 2010, the Petitioner, by and through *Appellate Counsel*, filed an *Amended Motion For Reduction Of Sentence*.

-5-

16. On November 5, 2010, the Court entered an *Order Denying Motion For Reduction Of Sentence*.

17. On November 29, 2010, the Petitioner, pro se, filed a *Notice Of Intent To Appeal Denial Of Rule 35(B) Motion* wherein the Petitioner alleged that "[t]he sole ground to be tentatively raised in the petition for appeal is that the court abused its discretion in not considering the factors presented by the Defendant in support of his motion."

18. On December 9, 2010, the Petitioner, *pro se*, filed a *Motion For Appointment Of Counsel For Rule 35(b) Appeal*, wherein the Petitioner alleged that his "current counsel, Anthony Ciliberti, Jr., sent Defendant a letter stating that he (Ciliberti) was closing Defendant's file and would take no further action on the case, including appeal."

19. On December 24, 2010, the Court entered an *Order* finding the Petitioner eligible for court-appointed counsel and appointing the Kanawha County Public Defender Corporation, Appellate Division, as counsel of record to represent the Petitioner in his Rule 35(b) appeal. Matthew Brummond, Esq., completed a *WV Supreme Court of Appeals Appellate Transcript Request*, requesting transcripts for "Hearings for the Motion for Reduction of Sentence filed by Def. on 10/15/10 And an Amended Motion for Reduction Hearing filed on 10/19/2010." An appeal was never prosecuted on the Rule 35(b) matter.

20. On December 2, 2013, Petitioner, *pro se*, filed a *Petition Under W.Va. Code § 53-4-1 For Writ Of Habeas Corpus* in the Fayette County Circuit Court (referred to hereinafter as "the *Petition*"). The *Petition* alleges the following grounds for relief:

    1) Ineffective Assistance of Counsel:

-6-

  a. Failure to investigate

  b. Ineffective Assistance of Counsel caused Guilty Plea

2) New Evidence: Medical Records

3) Coaching of Witness

4) Court Error: Living with a family member that is a sex offender does not constitute harsher punishment

5) Faulty Indictment: Two of the three counts are illegal

## ULTIMATE FINDINGS OF FACT AND CONCLUSIONS OF LAW

21. The right to petition the Court for a post-conviction writ of habeas corpus is guaranteed by the West Virginia Constitution, Article III, Section Four. Post conviction habeas corpus proceedings are governed by the *West Virginia Rules Governing Post Conviction Habeas Corpus Proceedings in West Virginia*, (referred to hereinafter as "Rule" or "Rules"), and West Virginia Code §53-4A-1, *et seq*. Pursuant thereto, the Court **FINDS** and **CONCLUDES** that the Court has jurisdiction over the subject matter of this proceeding.

22. Rule 4(b) states that the Court shall review the petition and exhibits in support thereof to determine if the Petitioner may have grounds for relief. If the petition as filed is not sufficient for the Court to conduct a fair adjudication of the matters raised therein, then the Court shall appoint an attorney to represent the Petitioner. *See* Rule 4(b).

23. " 'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to

-7-

such court's satisfaction that the petitioner is entitled to no relief.' Syl. pt. 1, Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973)." Syl. pt. 3, Markley v. Coleman, 215 W.Va. 729, 731, 601 S.E.2d 49, 51 (2004) (*per curiam*).

24. Rule 9(a) provides that, if the petition is not dismissed at a previous stage in the proceeding, and if the court determines that an evidentiary hearing is not required, the Court shall include in its final order specific findings of fact and conclusions of law as to why an evidentiary hearing was not required. *See* Rule 9(a).

25. In general, the post-conviction habeas corpus statute, W.Va.Code, 53-4A-1 et seq. (1967) contemplates that every person convicted of a crime shall have a fair trial in the circuit court, an opportunity to apply for an appeal, and one omnibus post-conviction habeas corpus hearing at which he may raise any collateral issues which have not previously been fully and fairly litigated. Losh v. McKenzie, 166 W. Va. 762, 764, 277 S.E.2d 606, 609 (1981).

26. "[A] [c]ircuit court denying or granting relief in [a] habeas corpus proceeding is statutorily required to make specific findings of fact and conclusions of law relating to each contention advanced by Petitioner, and to state [the] grounds upon which [the] matter was determined." Syl. pt. 4, Markley v. Coleman, 215 W. Va. 729, 731, 601 S.E.2d 49, 51 (2004); *See also* Syl. pt. 1, State ex rel. Watson v. Hill, 200 W.Va. 201, 488 S.E.2d 476 (1997); Syl. pt. 8, State ex rel. Vernatter v. Warden, West Virginia Penitentiary, 207 W.Va. 11, 14, 528 S.E.2d 207, 210 (1999).

27. West Virginia Code §53-4A-1(a) provides that a person convicted of a crime and incarcerated under a sentence of imprisonment may file a petition for writ of habeas corpus ad subjiciendum asserting certain grounds and seeking release:

> . . . if and only if such contention or contention and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceeding which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the Petitioner has instituted to secure relief from such conviction or sentence . . ..

West Virginia Code §53-4A-1(a).

28. West Virginia Code §53-4A-1(b) provides that:

> . . . [A] contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been previously and finally adjudicated only when at some point in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the Petitioner to secure relief from his conviction or sentence, there was a decision on the merits thereof after a full and fair hearing thereon and the time for the taking of an appeal with respect to such decision has not expired or has expired, as the case may be, or the right of appeal with respect to such decision has been exhausted, unless said decision upon the merits is clearly wrong.

West Virginia Code §53-4A-1(b).

29. West Virginia Code §53-4A-1(c) provides:

> . . . [A] contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been waived when the Petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds before trial, at trial, or on direct appeal (whether or not said Petitioner actually took an appeal), or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the Petitioner to secure relief from his conviction or sentence, unless such contention or contentions and grounds are such that, under the Constitution of the United States or the constitution of this state, they cannot be waived . . ..

-9-

West Virginia Code §53-4A-1(c).

30. A habeas corpus proceeding is not a substitute for a writ of error and ordinary trial error not involving constitutional violations will not be reviewed. Syl. pt. 4, State ex rel. Mcmannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805 (1979), cert. denied, 464 U.S. 831 (1983).

31. A person convicted of a crime is ordinarily entitled to only **one** post-conviction habeas corpus proceeding. *See* Syl. pt. 1, in part, Gibson v. Dale, 173 W.Va. 681, 319 S.E.2d 806 (1984); Syl. pt. 1, Markley v. Coleman, 215 W.Va. 729, 731, 601 S.E.2d 49, 51 (2004) (*per curiam*) (**emphasis added**).

32. Based upon the foregoing, the Court **FINDS** and **CONCLUDES** that the petition as filed, and the record in this matter, are sufficient for the Court to conduct a fair and thorough adjudication of the matters raised without an evidentiary hearing and without the appointment of counsel for the Petitioner. The Court further **FINDS** and **CONCLUDES** that based upon the prior proceedings in this matter, and a thorough review of the petition and the record, the Petitioner herein is not entitled to any relief and as such summary dismissal is appropriate.

## ANALYSIS OF EACH GROUND ASSERTED BY PETITIONER

Petitioner asserts the following five (5) grounds for relief in Petitioner's *Petition for Writ of Habeas Corpus Ad Subjiciendum*:

1)      Ineffective Assistance of Counsel,

     a.      Failure to investigate,

     b.      Ineffective Assistance of Counsel caused Guilty Plea;

-10-

2) New Evidence: Medical Records;

3) Coaching of Witness;

4) Court Error: Living with a family member that is a sex offender does not constitute harsher punishment; and

5) Faulty Indictment: Two of the three counts are illegal.

The Court will address each of the Petitioner's contentions in its analysis. However, due to the nature of the Petitioner's assertions, and in the interest of brevity, this Court will combine those grounds and contentions that may be assessed collectively under the same relevant authority.

## I. Petitioner alleges that his *Plea Counsel* provided ineffective assistance which induced Petitioner to enter a plea of guilty

The Petitioner asserts that his *Plea Counsel* was ineffective because *Plea Counsel* allegedly: 1) Failed to conduct a thorough investigation into a medical examination that was conducted on the victim on December 10, 2006 (referred to hereinafter as the "SAI Form"), and into the victim's interview conducted by law enforcement (referred to hereinafter as the "Victim's Interview"); and 2) Provided erroneous and deficient advice that induced the Petitioner to enter into a plea agreement with the State.

The two contentions asserted under Petitioner's ineffective assistance of counsel claim, are intertwined as they both relate to information the Petitioner "discovered" in the SAI Form and in the Victim's Interview. For all intents and purposes, the Petitioner's second contention under his ineffective assistance of counsel claim is nothing more than a restatement of the second prong of *Hill/Vernatter*. *See* discussion *infra* p. 14.

Further, the Petitioner's ineffective assistance of counsel claim is also ostensibly related to Petitioner's second and third ground for relief because they also relate to the contents of the

-11-

SAI Form and the Victim's Interview. *See* discussion and analysis *infra* pp. 29-36. As such, this Court incorporates its discussion of Petitioner's second and third ground for relief into its assessment of Petitioner's ineffective assistance of counsel claim and will utilize cross references to the analysis when necessary.

The West Virginia Supreme Court has stated, "[o]ur law is clear in recognizing that the Sixth Amendment of the federal constitution and Article III, § 14 of the state constitution guarantee not only the assistance of counsel in a criminal proceeding but that a defendant has the right to effective assistance of counsel." Ballard v. Ferguson, 232 W. Va. 196, 751 S.E.2d 716, 720 (2013) (citing Cole v. White, 180 W. Va. 393, 395, 376 S.E.2d 599, 601 (1988)).

"In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*: (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. pt. 5, State v. Miller, 194 W. Va. 3, 6, 459 S.E.2d 114, 117 (1995) (citation omitted). "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. pt. 6, Id. at 6-7, 459 S.E.2d at 117-118; *See also* Strickland, 466 U.S. at 689, 104 S. Ct. at 2065 (noting that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting

-12-

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

The *Miller* Court further addressed the objective standard to be applied to ineffective assistance of counsel claims, explaining that

> we always should presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.' The test of ineffectiveness has little or nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

Id. at 16, 459 S.E. 2d at 127.

The relation between *Strickland v. Washington* and cases asserting ineffective assistance of counsel claims arising from a guilty plea, was addressed in the United States Supreme Court case of *Hill v. Lockhart*. Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In *Hill* the United States Supreme Court held that

> the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, and *McMann v. Richardson*. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Id. at 58-59, 106 S. Ct. at 370, 88 L. Ed. 2d 203 (internal citations omitted).

Consistent with the holding in *Hill*, the West Virginia Supreme Court, in *State ex rel. Vernatter v. Warden, W. Virginia Penitentiary*, further adapted the second prong of the *Strickland/Miller* test to apply to ineffective assistance of counsel claims arising from a guilty plea. State ex rel. Vernatter v. Warden, W. Virginia Penitentiary, 207 W. Va. 11, 14, 528 S.E.2d 207, 210 (1999) (noting that *Strickland/Miller* requires a petitioner to show that, but for counsel's errors, petitioner would not have pled guilty and would have insisted on going to trial). The *Vernatter* Court further explained that

[t]he second or 'prejudice' requirement of the *Strickland/ Miller* test looks to whether counsel's deficient performance adversely effected [*sic*] the outcome in a given case. A modified prejudice standard applies in cases where a conviction rests upon a plea of guilty. In this [*sic*] circumstances the prejudice element focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Under *Hill*, 'prejudice' is a reasonable probability that the defendant would have insisted on going to trial had he not received the ineffective assistance, and a 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. While *Hill's* prejudice requirement focuses on a subjective question, the answer to that question must be reached through an objective analysis.

Id. at 18, 528 S.E.2d at 214 (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985) (internal citations and quotations omitted) (alterations from the original).

Although the Court may analyze Petitioner's claim under both prongs of the test, *Strickland* noted that

there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

-14-

Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; *See also* State ex rel. Vernatter v. Warden, W. Virginia Penitentiary, 207 W. Va. 11, 17, 528 S.E.2d 207, 213 (1999) (noting failure to meet either prong of the test is fatal to petitioner's claim).

Consistent with the foregoing, this Court will now analyze the contentions under Petitioner's ineffective assistance of counsel claim.

**A. Petitioner alleges *Plea Counsel* failed to conduct a thorough investigation into a medical examination that was conducted on the victim on December 10, 2006, and into the victim's interview conducted by law enforcement.**

**AND**

**B. Petitioner alleges that *Plea Counsel* provided erroneous and deficient advice that induced the Petitioner to enter into a plea agreement with the State.**

The Petitioner asserts that *Plea Counsel* failed to adequately investigate the contents of the SAI Form and the Victim's Interview, prior to advising the Petitioner in relation to the entry of a plea. Moreover, Petitioner asserts that if *Plea Counsel* had conducted an investigation into these discrepancies, information would have been revealed that would have dramatically altered the Petitioner's perception of the State's case against him and as such, Petitioner would never have pled guilty. *See Petition*, Ground I, Subsec. B., p. 2. As support for his contentions, the Petitioner cites discrepancies contained in the SAI Form and the Victim's Interview. *See* discussion *infra* pp. 30-31.

Plea counsel has a duty to conduct a reasonable investigation into the underlying facts of the case against a defendant. *See* Strickland v. Washington, 466 U.S. 668, 691, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984); *See also* Vernatter, 207 W. Va. at 17-18, 528 S.E.2d at 213-14.

-15-

Likewise, plea counsel's strategic decisions must be founded upon a reasonable investigation. *See* Strickland, 466 U.S. at 691, 104 S.Ct. at 2066; *See also* Vernatter, 207 W. Va. at 17-18, 528 S.E.2d at 213-14. Counsel is not required, however, to endlessly pursue every conceivable piece of evidence against a defendant, nor accurately assess the weight a jury may afford the then existing evidence, prior to advising the client on the entry of a plea. *See generally* Tollett v. Henderson, 411 U.S. 258, 267-68, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235(1973); *See also generally* McMann v. Richardson, 397 U.S. 759, 769-70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

Petitioner's argument that a more thorough investigation into the discrepancies contained in the SAI Form and the Victim's Interview, would have revealed information that would have dramatically altered the Petitioner's perception of the State's case against him and as such, Petitioner would never have pled guilty, does not extend beyond mere speculation. *See Petition*, Ground I, Subsec. B., p. 2. An extensive investigation beyond that which was already revealed in the discrepancies themselves, would not have altered the nature of those discrepancies, as even with further investigation, these issues would have still went to the weight and credibility that a jury may have afforded the victim witness's testimony had the matter proceeded to trial. *See generally* Syl. pt. 2, State v. Bailey, 151 W. Va. 796, 155 S.E.2d 850, 851 (1967) (reaffirming that the jury is the sole judge of the weight and credibility given to witness's testimony).

The Petitioner also fails to show how a more extensive investigation into the contents of the SAI Form and the Victim's Interview, would have altered the State's case against the Petitioner. More specifically, one key piece of the State's evidence against the Petitioner, the DNA forensic results on the semen recovered from the sex crime kit that was conducted on the

-16-

victim witness immediately following the assault (referred to hereinafter as the "DNA Results"), would have in no way been altered by further inquiry into the discrepancies contained in the SAI Form or the Victim's Interview.

The Petitioner's assertion that it was *Plea Counsel's* lack of investigation that caused Petitioner to be unaware of the "new evidence" that he has since discovered in the SAI Form and the Victim's Interview, and that had he known of these discrepancies, it would have dramatically altered his decision to enter into the plea, is without merit. *See* discussion *infra*, pp. 29-36.

The relevant portions of the plea transcript reveal the following communications between Petitioner's *Plea Counsel*, Petitioner (under oath), and the Court:

> THE COURT: All right. Why do you believe the agreement to be in your client's best interests?
>
> MR. HAYDEN: Your Honor, provided discovery that we had received earlier and the additional information that we received from the lab and the results that were contained therein, the amount of counts against my client and the deal that we have struck, if the Court was to endorse it, it was a deal that my client had to take.
>
> THE COURT: All right. And did you receive full discovery from the State of West Virginia in this matter?
>
> MR. HAYDEN: Yes, sir.
>
> THE COURT: Have you shared it with your client?
>
> MR. HAYDEN: Yes, sir. As the Court's aware, the last time we appeared in front of your Honor, we were still waiting on the results from the lab. They were a little late getting to us. To be quite honest, Your Honor, that was essentially the deal breaker.
>
> THE COURT: All right. And did your client authorize you to contact the State to try to work out an agreement in this matter rather than go to trial?
>
> MR. HAYDEN: Your Honor, I don't know exactly the way to say it; however, Mr. England and I have been in contact throughout this entire - - the length of our discussions have gone on for several months.
> So certainly, after the report was received, Mr. England and I talked once again. I've talked to my client on a number of occasions since that result has been received and, certainly, he has given me full authority to enter into this agreement. And by his

own signature and endorsement in front of you, he has accepted it, as well, Your Honor.

THE COURT: Now, when did you and your client sign this agreement?

MR. HAYDEN: That particular agreement was signed, that copy that you have in front of Your Honor, was this morning. However, we had a couple of different agreements that floated around. Counsel had originally given me a copy that left out the State standing silent at sentencing, so we had to get a new copy, and we signed that this morning.

Also this morning, my client and I have gone over in great detail the written plea of guilty, which essentially puts together the same things that you have in front of you, just in the written plea. So my client has been well aware of what's gone on for the last four or five days, a week, because we had trial set for today.

Plea Transcript, pp. 6-7.

And later during the plea colloquy:

THE COURT: Mr. Hayden, to what extent have you advised your client regarding these charges? Specifically, have you advised him concerning the elements of the offense for which he stands charged, the elements of any lesser included thereunder and the rights he has as a defendant in a criminal case, and give me an approximate estimate of how much time you've spent working on this case.

MR. HAYDEN: Approximate time of work on the case, several months. Your Honor, my client has always been there to answer telephone calls or come in to see me. We spent probably six to eight times together talking about the case. More recently, when plea negotiations heated up, we spent two or three different meetings together.

As far as the lesser included charges that he was questioned by Your Honor about earlier, we've discussed that a while back. Not so much here recently because we've been discussing the plea and potential resolutions as opposed to the trial and what can be - - what the jury can come back with. So that hasn't been something that we've discussed in the last week or so. That was much earlier in our discussions.

I think that my client is very well prepared today. He understands exactly what we're doing. He understands the burden being upon the State, also the elements. You know, essentially the

-18-

who, what, when, where and how of each individual count that is against him, and he understands that each one of those has to be proven beyond a reasonable doubt.

My client, as Your Honor could understand, has quite a bit of time looking at him here. Anywhere from ten to sixty years. So he's been extremely cautious but also extremely nervous. So considering that factor, I think that he's - - he's certainly entering this plea voluntarily and upon quite a bit of deliberation.

He's educated himself on what could happen if we go to trial with all the counts that are being dismissed, if the Court accepts this plea, and what he could be looking at at sentencing at a later date after the presentence investigation is done.

I think that my client is very well prepared today, and we've covered everything in detail.

THE COURT: All right. Did you hear what your lawyer just told the Court,

DEFENDANT: Yes, sir.

THE COURT: Do you agree with what he told the Court?

DEFENDANT: Yes, sir.

THE COURT: Do you feel that he has spent sufficient time working on your case?

DEFENDANT: Yes, sir.

THE COURT: Have you discussed the entry of this plea with anyone else you want to, such as family or friends, acquaintances or whatever?

DEFENDANT: I've talked about it with my boss. That's all.

THE COURT: Not that that's wrong. I just want to make sure you've thought about what you're doing. I don't want anyone to come in here and do something on the spur of the moment. I want to make sure that you've thought about what you're doing.

If you want to talk to anyone or if you want to talk to Mr. Hayden anymore before I ask you for your plea, I'll give you the opportunity to do that. Do you want to talk to anyone else about what you're doing?

DEFENDANT: No, sir.

. . . .

THE COURT: Right Have you understood all my questions up to this point,

DEFENDANT: Yes, Sir.

THE COURT: Do you have any questions whatsoever about your constitutional rights, your trial rights or anything else involving this matter?

DEFENDANT: No, sir.

-19-

THE COURT:    What is [sic] that you want me to do? Do you want me to accept your pleas to these three offenses or do you want a jury trial to determine your guilt or innocence?

DEFENDANT:    I want you to accept my pleas.

Plea Transcript, pp. 29-31, 35.

The Petitioner was provided this "new evidence" as part of the State's discovery approximately five (5) months prior to the entry of the plea. *See* State's Response To Discovery entered May 25, 2007, p. 1; *See also* discussion *infra*, pp. 34-35. *Plea Counsel* shared this discovery with the Petitioner. *See* Plea Transcript, p. 6; *See also supra* text par. 5, 6 pp. 3-4. The Petitioner had ample opportunity to review, consider, and incorporate this discovery into any discussions that he had with *Plea Counsel* prior to entering the guilty plea. Moreover, during the plea colloquy, the Petitioner never challenged or contested the discovery, his guilt, or the validity of *Plea Counsel*'s proffers.

Contrary to Petitioner's assertions, the Court is satisfied that the Petitioner and *Plea Counsel had thoroughly discussed and considered* the charges and evidence against the Petitioner, what the State was required to prove to convict the Petitioner of these charges, and the potential benefit of entering a plea, well in advance of the Petitioner actually entering the plea.

At the time of the plea, significant emphasis was placed on the DNA Results, not the SAI Form and Victim's Interview, as the primary motivation for Petitioner's decision to direct *Plea Counsel* to enter into serious plea negotiations with State's counsel. *See* Plea Transcript, pp. 6-7. It wasn't until these results were received and disclosed, that the Petitioner and *Plea Counsel* fervently attempted to solidify a plea agreement with State's counsel. Id. Based upon the record, as a whole, the Court is unconvinced by Petitioner's new found emphasis upon the discrepancies contained in the SAI Form and the Victim's Interview.

-20-

The Petitioner would have this Court isolate Petitioner's assertions and assess them without the acknowledgement of the surrounding circumstances or other relevant portions of the record. The Court, however, does not operate in a vacuum. To determine whether *Plea Counsel's* advice was competent and whether the Petitioner's guilty plea was voluntarily and knowingly entered, this Court must not gauge the competence of *Plea Counsel's* advice solely against those issues raised by the Petitioner, but rather, against all of the circumstances and information then available for *Plea Counsel's* consideration. *See generally* Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

The United States Supreme Court, in *Tollett v. Henderson*, addressed some of the practical considerations counsel may undertake during the good faith representation of a criminal defendant;

> The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt. *A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea. . . .*

Tollett v. Henderson, 411 U.S. 258, 267-68, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235(1973) (internal citations omitted) (*emphasis added*).

Accepting the advice of Counsel to enter a guilty plea, rather than go to trial, is not, however, without risk. *See* McMann v. Richardson, 397 U.S. 759, 769-70, 90 S. Ct.

-21-

1441, 1448, 25 L. Ed. 2d 763 (1970). As the United States Supreme Court noted in

*McMann v. Richardson,*

> the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, *as he understands them,* would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? . . ? [A] [q]uestion[] like [this] cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

Id. (alterations from original) (internal citations omitted) (*emphasis added*).

Likewise, the mandate "[t]hat a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." Id. at 770, 90 S. Ct. at 1448.

In simpler terms, this Court must determine whether *Plea Counsel*'s evaluation of the discrepancies contained in the SAI Form and the Victim's Interview, when taken in conjunction with the other evidence against the Petitioner, applied to the multiple charges that the Petitioner was facing, and then assessed against the potential for conviction during a jury trial, would lead an attorney reasonably proficient in criminal matters to recommend the entry of a plea. *See generally* Hill v. Lockhart, 474 U.S. at 56-57, 106 S. Ct. at 369 (establishing petitioner must show advice received was outside range of competence demanded of criminal attorneys); *See also* Syl. pt. 2., State v. Sims, 162 W. Va. at 217, 248 S.E.2d at 838 (noting that the validity of a guilty plea rests upon the competency of the advice given by counsel).

In the case of *State v. Sims*, the West Virginia Supreme Court further expounded upon the burden bore by a petitioner who attempts to set aside a guilty plea alleging plea counsel provided incompetent advice:

> [O]n a direct appeal, as well as in a habeas corpus proceeding, before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error.

State v. Sims, 162 W. Va. 212, 219, 248 S.E.2d 834, 838-39 (1978).

Competent counsel would likely consider that the Petitioner was indicted for five (5) counts of sexual assault in the second degree, punishable by an indeterminate sentence of ten (10) to (25) twenty-five years for each count, and five (5) counts of sexual abuse by a parent, guardian, or custodian of a child, punishable by and indeterminate sentence of ten (10) to (20) years for each count. If the Petitioner was convicted by a jury of all ten (10) charges contained in the indictment, the Petitioner was facing a potential indeterminate sentence of one hundred (100) to two hundred and twenty-five (225) years in prison.

Competent counsel would likely recognize that the discrepancies in the SAI Form and the Victim's Interview, went solely to the weight and credibility that a jury may have given the victim witness's testimony had this matter proceeded to trial. *See* discussion *supra*, pp. 16-17; *See also* discussion *infra*, pp. 30-32.

Competent Counsel could have also easily weighed these discrepancies, against the DNA Results and other evidence, and determined that there was a considerable threat of conviction if the matter went before a jury.

-23-

Following the disclosure of the DNA Results, *Plea Counsel* not only negotiated a deal where seven (7) of the ten (10) charges against the Petitioner would be dismissed, but also where the State would remain silent as to the sentencing in the matter. This allowed the Petitioner to seek probation, without contest by the State. Additionally, the plea agreement negotiated by *Plea Counsel* permitted the Petitioner to plead to three (3) of the lesser charges that held the lowest potential sentence for the Petitioner.

Based upon the record in its entirety, and a complete assessment of the surrounding circumstances, the Court is unconvinced that *Plea Counsel* acted incompetently in the handling of Petitioner's case or that the discrepancies contained in the SAI Form or Victim's Interview would have substantially affected the fact-finding process if the case had proceeded to trial. Even though it is unnecessary, the Court would also note that it finds the Petitioner's assertion that the contents of the SAI Form and Victim's Interview were unknown to him, untruthful and factually without merit.

After applying the foregoing to the first prong of the modified *Strickland/Miller* test, it is this Court's opinion that a reasonably proficient criminal attorney could have assessed the discrepancies in the SAI Form and the Victim's Interview, in the same manner as *Plea Counsel*. Further, this Court is of the opinion that a reasonably proficient criminal attorney could have determined that an exhaustive investigation into these discrepancies was unnecessary as the State's case against the Petitioner would have been unaltered since those issues went solely to the weight and credibility a jury may afford the victim witness's testimony, had the matter proceeded to trial. The Court also finds that the advice given by *Plea Counsel* was not outside

-24-

the range of reasonably competent service demanded of a reasonably proficient criminal attorney.

Even assuming, arguendo, that Petitioner could show that *Plea Counsel*'s investigation, or lack thereof, meets the first prong of the modified *Strickland/Miller* test, Petitioner's contention still fails because he is unable to meet the prejudice prong.

As previously noted, the United States Supreme Court in *Hill* provided that,

> [i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370.

As is made clear by both the Court's analysis of Petitioner's claim under the first prong of the modified *Strickland/Miller* test, and the discussion of Petitioner's second and third grounds for relief *infra*, it is highly unlikely that further investigation into the discrepancies contained in the SAI Form and the Victim's Interview would have caused *Plea Counsel* to change his plea recommendation, or in any way, alter the outcome of a trial in the matter. Further, this Court does not find any evidence in the record that would show a reasonable probability that Petitioner would have insisted on going to trial rather than accepting the competent advice of *Plea Counsel*, had he been "more aware" of the contents of the SAI Form or Victim's Interview.

Based upon the foregoing this Court **FINDS** and **CONCLUDES** the following:

-25-

1. The SAI Form and Victim's Interview were disclosed to the Petitioner prior to Petitioner entering a guilty plea; and

2. The plea advice given by *Plea Counsel* was not incompetent; and

3. Petitioner is unable to establish that *Plea Counsel*, prior to advising the Petitioner on the entry of the guilty plea, failed to conduct an adequate investigation into the discrepancies contained in the SAI Form and the Victim's Interview; and

4. *Plea Counsel*'s performance in Petitioner's case, was neither unreasonable, nor deficient; and

5. The Petitioner's ineffective assistance of counsel claim is without merit as it fails to meet either prong of the modified *Strickland/Miller* test; and

6. The Petitioner is entitled to no habeas relief as the Petitioner's State and Federal Constitutional right to effective assistance of counsel was not violated.

## C. Petitioner's other claim related to the knowing and voluntary nature of Petitioner's plea.

The Petitioner also asserts in his petition that he "repeated what the defense counsel advised him to say. Without understanding nor [*sic*] comprehending, the petitioner agreed with all the court said since the defense attorney advised that he had to." *Petition*, Ground I, subsec. B., p. 2. The Petitioner further asserts that "[n]ow that new evidence has come forth, the petitioner sees how he was 'duped' into taking a plea." Id. at 2; *See also* discussion *infra*, pp. 30-32.

Although the Court discussed in the preceding section the knowing and voluntary nature of Petitioner's plea, the Court will take this opportunity to address Petitioner's blanket assertion, for good measure, as it is one commonly seen in habeas petitions.

-26-

In addressing the knowing and intelligent waiver of rights during a guilty plea, the United States Supreme Court stated that

> [a] conviction after a plea of guilty normally rests on the defendant's own admission in open court that he committed the acts with which he is charged. That admission may not be compelled, and since the plea is also a waiver of trial-and unless the applicable law otherwise provides, a waiver of the right to contest the admissibility of any evidence the State might have offered against the defendant-it must be an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.

McMann v. Richardson, 397 U.S. 759, 766, 90 S. Ct. 1441, 1446, 25 L. Ed. 2d 763 (1970) (internal citations and quotations omitted).

Further, the West Virginia Supreme Court has previously stated "[t]he most common issues in Habeas corpus cases are whether there were, indeed, knowing and intelligent waivers, whether there were facts outside the record which improperly caused the defendant to enter his plea, and whether defendant's counsel was indeed competent." Call v. McKenzie, 159 W. Va. 191, 196, 220 S.E.2d 665, 669-70 (1975).

The record reflects the following exchange between the Petitioner (under oath) and the Court during the plea colloquy:

COURT: Has anyone threatened you or placed you or a family member in fear to get you to plead guilty today?

DEFENDANT: No, sir.

COURT: Is your plea of guilty entered today your own free and voluntary act?

DEFENDANT: Yes, sir.

COURT: Do you believe it to be in your best interests?

DEFENDANT: Yes, sir.

COURT: Did the prosecuting attorney or any police officer or *your lawyer* or members of your family, did anyone else *talk you into or get you to plead guilty against your better judgment?*

DEFENDANT: No, sir.

COURT: Have you understood all my questions I've asked about your plea, your rights and otherwise today?

DEFENDANT: Yes, sir.

-27-

| COURT: | *Have your answers been truthful?* |
|---|---|
| DEFENDANT: | Yes, sir. |
| COURT: | Is it still your desire that I accept your pleas of guilty tendered in this matter? |
| DEFENDANT: | Yes, sir. |

Plea Transcript, pp. 44-45 (*emphasis added*).

A guilty plea will not be set aside when a defendant had the assistance and advice of competent counsel and the Court's record reflects a sufficient inquiry into the knowing and voluntary nature of the plea. *See* McMann v. Richardson, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *See also* Syl. pt. 3, State ex rel. Burton v. Whyte, 163 W.Va. 276, 256 S.E.2d 424(1979); Call v. McKenzie, 159 W. Va. 191, 220 S.E.2d 665 (1975); *See also* discussion *infra* pp. 33-35.

The *Mckenzie* Court clearly announced the impenetrable soundness of a properly executed guilty plea;

> [w]here there is a transcript of the colloquy which occurred between the court and the accused before the acceptance of the plea of guilty, and where that transcript conclusively demonstrates that there was a knowing and intelligent waiver of those rights necessarily surrendered as a result of a guilty plea, the issue is Res judicata in a subsequent action in Habeas corpus and the petition for Habeas corpus may be summarily dismissed without an evidentiary hearing.

Call v. McKenzie, 159 W. Va. at 195, 220 S.E.2d at 669. Similarly, the *Whyte* Court found that "[a] guilty plea based on competent advice of counsel represents a serious admission of factual guilt, and where an adequate record is made to show it was voluntarily and intelligently entered, it will not be set aside." Syl. pt. 3, State ex rel. Burton v. Whyte, 163 W.Va. 276, 256 S.E.2d 424 (1979).

Based upon the communications the Petitioner had with the Court when responding to the Court's questioning, this Court finds Petitioner's assertion that he didn't understand or

-28-

comprehend the plea proceedings and that he only said what his *Plea Counsel* had previously told him to say, highly suspect and without merit. *See* Plea Transcript, pp. 11, 20-21, 24, 28, 31, 37-42, 44-45.

Moreover, during the Court's extensive plea colloquy consisting of fifty (50) transcribed pages, the Petitioner freely and voluntarily entered into the plea and provided the Court with a detailed factual account of the crimes to which the Petitioner was pleading. *See* Plea Transcript, pp.35-48. At no point, during this plea colloquy, did the Petitioner profess his innocence, question the discovery provided by the State, show dissatisfaction with his *Plea Counsel*'s services, or assert any desire for the Court to do anything other than accept his plea, even though the Court gave him multiple opportunities to do so.

Based upon the foregoing, the Court **FINDS** and **CONCLUDES** that the Petitioner, with the assistance of competent counsel, freely, knowingly, and voluntarily waived his constitutional rights and entered a guilty plea to three (3) counts of sexual abuse by a parent, guardian, or custodian.

II.     **Petitioner's alleges as his second ground for relief that medical records were discovered which reveal new evidence that support the relief sought by Petitioner under his habeas petition.**

**AND**

III.    **Petitioner's alleges as his third ground for relief that the juvenile victim was coached.**

The Court will address Petitioner's second and third contention together as they are significantly related. Petitioner contends that he is entitled to the relief sought because the juvenile victim was coached prior to giving her statement to police and because "new" evidence was discovered in the form of medical records wherein the Petitioner alleges the victim disclosed conflicting statements.

-29-

As the WestVirginia Supreme Court has previously stated, "[h]abeas corpus serves as a collateral attack upon a conviction under the claim that the conviction was obtained in violation of the state or federal constitution." Edwards v. Leverette, 163 W.Va. 571, 576, 258 S.E.2d 436, 439 (1979). Further, "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. pt. 4, State ex rel. Mcmannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805 (1979), cert. denied, 464 U.S. 831 (1983).

In addition to establishing a constitutional violation, a petitioner's contention(s) must also be supported in law and fact before it is subject to review. See Markley v. Coleman, 215 W. Va. 729, 734, 601 S.E.2d 49, 54 (2004) (noting that allegations must have adequate factual support for appointment of counsel, hearing, or issuance of the writ) (citing Losh v. McKenzie, 166 W. Va. 762, 771, 277 S.E.2d 606, 612 (1981).

In support of Petitioner's "coaching" contention, Petitioner relies on the following language taken from the transcript of the law enforcement interview conducted with the juvenile victim:

Q: The last time it happened in the kitchen, can you remember about what time maybe that was?
A: About 4.
Q: But it was before *in audible
A: Yeah.
Q: Okay, so *in audible just the two of you?
A: Yeah.
Q: Did he tell you *in audible wanted to go, did you have to go, wanted you to go, or did you just want to go?
A: Well, he, I wanted to go, but I didn't think he would do it again.
Q: Okay. You told me about that time, now what, what vehicle *in audible at that time, when that happened?

-30-

A: I don't know what kind of car it was, but it was his brother's car.

Q: Okay and what color is it?

A: *My mom said it was white with a maroon top on it.*

*See Petition*, Exh. C *(emphasis added)*.

In relation to Petitioner's "new" evidence contention, Petitioner also relies on the following sections extracted from the SAI Form that was completed shortly after the reported sexual assault:

E. Did the assailant's mouth have contact with any part of your body?

[The "NO" box is marked].

F. Did your mouth have contact with the assailant's body?

[The "NO" box is marked].

*See* SAI Form, p. 1.

The Petitioner also draws support from another highlighted entry in the SAI Form which appears as follows:

ASSAULT HISTORY: Emotional demeanor of the victim: (i.e. Crying, angry (*sic*) agitated, lethargic, frightened, shocked, depressed, etc.) Laughing (*sic*) talking.

The Petitioner's mere assertions, in conjunction with the Petitioner's cited examples, does not convince this Court that it must appoint counsel and conduct a hearing to further explore these issues. *See generally* Markley v. Coleman, 215 W. Va. at 734, 601 S.E.2d at 54. The Court finds Petitioner's cited examples do not establish probable cause warranting further inquiry. *See generally*, Losh v. McKenzie, 166 W. Va. at 771, 277 S.E.2d at 612. Further, the errors alleged by the Petitioner, simply do not implicate constitutional violations subject to

-31-

review in a habeas proceeding. *See generally* <u>Edwards v. Leverette</u>, 163 W.Va. at 576, 258 S.E.2d at 439.

Moreover, Petitioner asserts that the SAI Form is "new" evidence. This Court finds Petitioner's argument unpersuasive. Petitioner's reasoning is not only inadequate, but also misguided. Under Petitioner's reasoning, the Petitioner's "coaching" evidence would also qualify as "new" evidence, as would anything discovered by an inmate, who following a plea of guilty, finds himself with an abundance of time available to review every scintilla of evidence contained within his or her case file.

As the West Virginia Supreme Court has previously stated,

> [t]he factors that must be satisfied in order to obtain a new trial based upon newly discovered evidence are as follows: . . . (1) The evidence *must appear to have been discovered since the trial*, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his or her affidavit that the *defendant was diligent in ascertaining and securing the evidence, and* that the new evidence is such that *due diligence would not have secured it before the verdict.* (3) Such evidence *must be new and material*, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to *produce an opposite result* at a second trial on the merits. (5) *And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.*

<u>State ex rel. Smith v. McBride</u>, 224 W. Va. 196, 206-07, 681 S.E.2d 81, 91-92 (2009) (alterations from original) (citations omitted) (*emphasis added*).

The Petitioner's alleged "new" evidence, for all intents and purposes, fails to meet even a single factor outlined in *McBride*. However, of particular importance in Petitioner's case, is the fifth factor: *"And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side."* <u>Id</u>. at 206, 681 S.E.2d at 91 (citations omitted) (*emphasis added*). The examples provided by the Petitioner as support for

both the second and third grounds for relief, are exclusively and solely for the purpose of discrediting and impeaching the victim witness during cross examination.

In addition to failing for lack of the necessary constitutional implications, Petitioner's contentions also fail because of the knowing and voluntary nature of his plea. "A defendant may knowingly and intelligently waive constitutional rights." Call v. McKenzie, 159 W. Va. 191, 195, 220 S.E.2d 665, 669 (1975) (citations omitted). "Once having done so he cannot be heard to complain thereafter." Id. at 196, 220 S.E.2d at 669 (citations omitted). In relation to a plea of guilty, the most common habeas issues can be finally resolved if the Court taking the original plea cautiously follows the suggestions outlined in *Call v. McKenzie*. *See* Id. at 196, 220 S.E.2d at 669-670; *See also* discussion *supra* pp. 15-26.

The plea transcript, in pertinent part, reveals the following exchange that occurred between the Petitioner and the Court during the plea colloquy:

Q:  Furthermore, if the case did go to trial, you have certain trial rights. You have a right to an attorney to assist you in the defense of your case, and you've got Mr. Hayden. And you have the right to cross-examine and confront all the State's witnesses.

Additionally, you could testify in your own behalf to satisfy the jury that you did not commit the offenses charged if you desire, or you could stand mute and the jury would be advised to draw no inferences whatsoever.

If the State has evidence against you which may have been illegally obtained, you're entitled to a suppression hearing. And if the Court determines that the evidence is inadmissible, it would be suppressed and could not be used against you at trial. Do you understand that?

A:  Yes, sir.

. . ..

Q:  Do you further understand that, if you enter a plea of guilty to these counts of the indictment, you're waiving any and all pretrial

-33-

defects with regard to your arrest, the gathering of evidence and prior confessions? Further, if you enter a plea of guilty you're waiving all nonjurisdictional defects in the criminal proceeding? Do you understand that?

A:   Could you explain the last part of it?

Q:   All right. If you enter a plea of guilty to the indictment, you're waiving, or giving up, any and all pretrial defects with regard to your arrest, the gathering of evidence and prior confessions. What that means is, if there were some mistakes made in any of those areas, by pleading guilty, you're giving up the right to complain about it. Do you understand that?

A:   Yes, sir.

Q:   All right. Further, if you enter a plea of guilty, you're waiving all nonjurisdictional defects in the criminal proceeding.

What that means is, jurisdictionally, there are certain requirements that have to be met. But then there are certain nonjurisdictional defects that don't have anything to do with constitutionality or whatever; that you are giving up any right to complain about any other defects. Do you understand that?

A:   Yes, sir.

*See* Plea Transcript, pp. 26, 28-29.

The Petitioner, prior to his plea of guilty, had ample opportunity to raise these and any other issues relating to the consistency of the victim's statements. The Victim's Interview and SAI Form were both provided as part of the State's discovery. *See* State's Response To Discovery entered May 25, 2007, p. 1. In the presence of the Petitioner, during the plea colloquy, *Plea Counsel* advised that he had received full discovery from the State and had shared that discovery with the Petitioner. *See* Plea Transcript, p. 6. The Petitioner did not assert that *Plea Counsel*'s statement was incorrect. More importantly, as evidenced by the record, the Petitioner received the subject documents as part of the discovery provided by the prosecution prior to

-34-

entry of the plea. *See* State's Response To Discovery entered May 25, 2007, p. 1. The Petitioner, by his own admission, acknowledged that he received copies of the subject documents not once, but twice, prior to filing an original jurisdiction petition for a writ of habeas corpus and an appeal with the West Virginia Supreme Court. *See* text *supra* par. 5, 6 pp. 3-4.

More importantly, the Court conducted an extensive Rule 11 plea colloquy consisting of fifty (50) transcribed pages. *See* Plea Transcript pp. 2-51. The Petitioner's trial rights and constitutional rights, including the right to cross examine witnesses and to challenge pre-trial defects, were clearly explained during the extensive examination that was conducted by the Court. *See* Plea Transcript, pp. 17-36. The Petitioner was fully involved with the plea colloquy as is evidenced by him requesting further explanation in relation to non-jurisdictional defects. *See* Plea Transcript, p. 28. Quite simply, the Petitioner, with the assistance of competent counsel, knowingly and voluntarily waived his rights, including the right to challenge the victim's statements, and relinquished his opportunity to impeach that witness, when he gave up his right to have a jury decide the issue.

Based upon the foregoing this Court **FINDS** and **CONCLUDES** the following:

1. The subject documents cited as support for Petitioner's second and third contentions were provided in discovery by the State to the Petitioner prior to entry of the plea; and

2. No factual basis exists to support the Petitioner's contention that the victim was coached; and

3. The SAI Form, and the information contained therein, does not constitute "new" evidence; and

4. The evidence cited as support for the Petitioner's second and third ground for relief, serves the sole purpose of impeachment of the victim witness during cross examination; and

-35-

5. Even if some factual basis exists to support Petitioner's contentions, it is miniscule at best, and does not rise to the level necessary to implicate constitutional violations reviewable in a habeas proceeding; and

6. The Petitioner, with the assistance of competent counsel, knowingly and voluntarily waived his constitutional right to challenge pre-trial defects and to cross examine witnesses; and

7. Petitioner's second ground for relief is without merit as it does not violate the West Virginia Constitution; and

8. Petitioner's third ground for relief is without merit as it does not violate the West Virginia Constitution.

IV. **Petitioner alleges as his fourth ground for relief that the Judge punished him more harshly because he lived with a family member who was a registered sex offender.**

The Petitioner contends that the Court punished him more harshly because he lived with a family member who was a sex offender.

The codified punishment for the crime of sexual abuse by a parent, guardian, or custodian is "imprison[ment] in a correctional facility not less than ten nor more than twenty years, or [a] fine[] [of] not less than $500 nor more than $5,000 and imprison[ment] in a correctional facility not less than ten years nor more than twenty years." W. Va. Code § 61-8D-5 (West).

In West Virginia, "[o]ur system of criminal jurisprudence views a trial court's discretion during the sentencing phase of a criminal proceeding as a critical component of the process." State ex rel. Hatcher v. McBride, 221 W. Va. 760, 765, 656 S.E.2d 789, 794 (2007) (citing State v. Head, 198 W.Va. 298, 306, 480 S.E.2d 507, 515 (1996) (Cleckley, J., concurring). The length of time imposed at sentencing, as long as it is within the confines of statutory parameters and not based upon some impermissible factor, is at the sole discretion of the sentencing judge. *See generally* State v. James, 227 W. Va. 407, 710 S.E.2d 98 (2011); Syl. pt. 4, State v. Goodnight, 169 W.Va. 366, 287 S.E.2d 504 (1982); State ex rel. Hatcher v. McBride, 221 W. Va. at 761,

-36-

656 S.E.2d at 790; *See also* Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); United States v. White, 240 F.3d 127 (2d Cir. 2001). As the *James* Court noted,

> there is nothing that suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute. [W]here factual determinations are used to sentence the defendant to a sentence within the maximum allowed by statute, *Apprendi* is not controlling, and such determinations can be made by the court without violating the defendant's right to due process.

State v. James, 227 W. Va. at 418, 710 S.E.2d at 109 (citing Apprendi v. New Jersey, 530 U.S. 466, 481, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); United States v. White, 240 F.3d 127, 136 (2nd Cir.2001) (citations omitted)).

At Petitioner's sentencing hearing, the Court discussed the sex offender evaluation report that was provided by Cornerstone Psychological. *See* Sentencing transcript, pp. 16-18. The Court further addressed the pre-sentence investigation report and addendum to the pre-sentence investigation report filed by the probation officer. *See* Id. at 18-19. These reports noted that the Petitioner had failed to mention that he was living with a brother who is a registered sex offender. *See* Id. at 17-18; *See also* Id. at 19.

The Court did not place particular emphasis on the issue of Petitioner living with a registered sex offender. The Court, however, did place emphasis upon the Petitioner's failure to accept responsibility for his actions and his attempts to withhold or distort information. *See* Id. at 18-21.

The Petitioner had previously provided the Court with a factual basis for acceptance of the plea, and had reiterated this factual basis at the beginning of the sentencing hearing. *See* Plea Transcript, pp. 36-42; *See also* Sentencing Transcript, p. 8. During the interim, the Petitioner

recanted and provided misleading, self-serving information during his pre-sentence investigation and sex offender evaluation. *See* Sentencing Transcript, pp. 8-9, 15-21. After a thorough review, explanation and discussion, the Court denied Petitioner's application for probation and ordered the three ten (10) to twenty (20) year sentences earlier pronounced, to be served consecutively. *See* Id. at 21.

It was within the sole discretion of the Judge to sentence the Petitioner to consecutive ten (10) to twenty year (20) sentences for each of his three convictions of sexual abuse by a parent, guardian, or custodian, as that sentence is clearly within the confines of the sentencing parameters established in W. Va. Code § 61-8D-5. Further, the Court considered several permissible factors in determining that this sentence was appropriate to impose upon the Petitioner. Foremost among these factors was the Petitioner's refusal to accept responsibility for his actions which rendered him unacceptable for meaningful rehabilitation and treatment.

Based upon the foregoing the Court **FINDS** and **CONCLUDES** the following:

1.  The Judge did not abuse his discretion in considering various permissible factors that related to the offense and the Petitioner, in determining the appropriate sentence to impose upon the Petitioner; and

2.  The sentence imposed upon the Petitioner was within the statutory parameters established by W. Va. Code § 61-8D-5; and

3.  The Petitioner's Fourth ground for relief is frivolous and without merit as it violates neither the United States, nor the West Virginia, Constitution.

V.  **Petitioner alleges as his fifth ground for relief that the indictment was faulty because two of the three counts that he pled to were illegal.**

Petitioner contends that his indictment was faulty and illegal..

-38-

The United States Supreme Court previously addressed the two minimum criteria necessary for an indictment to be constitutionally sufficient: 1) the indictment must provide the defendant with enough information to allow him to prepare a defense and to protect him against further prosecution for the same offense; and 2) the indictment must describe the charge with enough certainty for a court to determine whether the facts are sufficient in law to support a conviction. *See* United States v. Cruikshank, 92 U.S. 542, 557-58, 23 L. Ed. 588, 593 (1875).

With only slight modifications, the West Virginia Supreme Court adopted similar criteria for testing the constitutional sufficiency of an indictment. *See* State v. Childers, 187 W.Va. 54, 415 S.E.2d 460 (1992). *Childers* confirmed that to be constitutionally sufficient in West Virginia, an indictment must: 1) clearly state the nature and cause of the accusation against a defendant, enabling him to prepare his defense and plead his conviction as a bar to later prosecution for the same offense; and 2) substantially follow the language of the statute, fully inform the accused of the particular offense with which the accused is charged and enable the court to determine the statute on which the charge is based. *See* Syl. pt. 1 & 2, State v. Childers, 187 W. Va. at 55, 415 S.E.2d at 461; *See also* Syl. pt. 8 & 9, State v. George W.H., 190 W. Va. 558, 569, 439 S.E.2d 423, 434 (1993).

The indictment returned against the Petitioner consisted of ten (10) counts. *See* Indictment No. 07-F-100, pp. 1-5. The Petitioner pled to Counts Two, Four, and Six as contained in the indictment. *See* Plea Transcript, p. 36. The language of Count Two of Petitioner's indictment reads as follows:

> And the Grand Jurors, upon their oaths aforesaid, do further present that CLARENCE P             on or about the 10th day of December, 2006, in the said County of Fayette, committed the offense of "sexual abuse by a parent, guardian or custodian" in that he did unlawfully and feloniously engage in sexual contact with K.W., a child, by placing his penis in her mouth, for his own sexual

-39-

gratification, and the said K.W. not being married to CLARENCE            , and while the said K.W. was in the care, custody or control of CLARENCE  the custodian of K.W., against the peace and dignity of the State.

W. Va. Code § 61-8D-5

*See* Indictment No. 07-F-100, p. 1.

The language of Count Four of Petitioner's indictment reads as follows:

And the Grand Jurors, upon their oaths aforesaid, do further present that CLARENCE           on or about the 10th day of December, 2006,,[*sic*] in the said County of Fayette, committed the offense of "sexual abuse by a parent, guardian or custodian" in that he did unlawfully and feloniously engage in intercourse with K.W., a child, by placing his penis in her vagina, for his own sexual gratification, and the said K.W. not being married to CLARENCE P.  and while the said K.W. was in the care, custody or control of CLARENCE            the custodian of K.W., against the peace and dignity of the State.

W. Va Code § 61-8D-5

*See* Indictment No. 07-F-100, p. 2.

The language of Count Six of Petitioner's indictment reads as follows:

And the Grand Jurors, upon their oaths aforesaid, do further present that CLARENCE            on or about the 10th day of December, 2006, in the said County of Fayette, committed the offense of "sexual abuse by a parent, guardian or custodian" in that he did unlawfully and feloniously engage in sexual contact with K.W., a child, by placing his mouth on her vagina, for his own sexual gratification, and the said K.W. not being married to CLARE            and while the said K.W. was in the care, custody or control of CLARENCE P.  the custodian of K.W., against the peace and dignity of the State.

W. Va. Code § 61-8D-5

*See* Indictment No. 07-F-100, p. 3.

The relevant portion of W. Va. Code § 61-8D-5 in effect at the time Petitioner committed the offense states that

[i]f any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or

-40-

attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony . . . .

W. Va. Code § 61-8D-5 (2005).

Petitioner's indictment clearly states that the allegation against the Petitioner was that he had knowing felonious sexual contact and intercourse with a juvenile who he was the then acting custodian of. Further the language used in the indictment substantially followed the language contained in the 2005 version of West Virginia Code §61-8D-5. There can be no question that the Petitioner was put on ample notice of the conduct for which he was being charged. Nor is there any question that it was abundantly clear what charges the Petitioner faced and under what statute the Petitioner was being charged.

It can be further deduced from Petitioner's argument, that Petitioner is actually asserting a factual dispute over the definition of "custodian". In short, Petitioner contends that he does not meet the definition of custodian, and as such, the indictment is fatally flawed since the indictment charged him with sexual abuse by a parent, guardian, or custodian.

The West Virginia Code defines custodian as

. . . a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or *temporary basis*, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding. "Custodian" shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or *a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife*, where such spouse or other person shares actual physical possession or care and custody of a child with the parent, guardian or custodian.

-41-

W. Va. Code § 61-8D-1(4) (West) (*emphasis added*). The West Virginia Code also defines a "person in a position of trust in relation to a child" as "any person who is acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities concerning a child or someone responsible for the general supervision of a child's welfare." W. Va. Code § 61-8D-1(12) (West).

In alleging that he wasn't the custodian of the child victim, the Petitioner cites the case of *State v. Longerbeam*, as support for his argument. State v. Longerbeam, 226 W. Va. 535, 703 S.E.2d 307 (2010) (*per curiam*). The *Longerbeam* case involved a factual scenario where an uncle by marriage, and his wife, responded to the home of the juvenile victim after the wife received a call from the youngest of her sister's three daughters requesting help in catching a loose hamster. Id. at 537, 703 S.E.2d at 309. The eldest daughter was babysitting the younger two, but was asleep in her room at the time of the call for help and the defendant's arrival at the home. Id. By a majority decision, the West Virginia Supreme Court determined that the juvenile victim was in the care, custody and control of the babysitting daughter and that the defendant did not meet the definition of a custodian or person in a position of trust to a child *at the time* of the sexual assault. Id. at 540-41, 703 S.E.2d at 312-313.

This Court is of the opinion that *Longerbeam* can factually be distinguished from the Petitioner's case. The Petitioner resided with the victim's mother, as her paramour, for approximately 12 years. *See* PSI Addendum, p. 2; *See also* Sentencing Transcript, p. 15-16. This was the vast majority of the twelve (12) year old victim's life. *See* Sentencing Transcript, pp. 15-17. The victim trusted the Petitioner and viewed him as a father figure. *See* Id. In laying the factual basis for the plea the Petitioner disclosed that he had spent the night before, and most of

-42-

the day of, the assault, with the juvenile victim and the victim's mother. *See* Plea Transcript, pp. 38-40. Further, the Petitioner conceded during the plea colloquy that, at the time of the incident, he was acting as the custodian of the juvenile victim. Id.

The West Virginia Supreme Court has also previously addressed factual scenarios, more akin to the Petitioner's, where the temporary physical control of a child conferred a custodial relationship upon an adult. *See* Syl. pt. 1, State v. Stephens, 206 W.Va. 420, 525 S.E.2d 301 (1999) (establishing that a short term babysitter may be a custodian); *See also* State v. Collins, 221 W. Va. 229, 234, 654 S.E.2d 115, 120 (2007) (upholding jury determination that consensual short term four wheeler rides with the defendant conferred a custodial relationship).

This Court is of the opinion that, unlike the defendant in *Longerbeam*, Petitioner's factual scenario confers a custodial relationship, and in the alternative, a position of trust, upon the Petitioner. .

Based upon the foregoing, the Court **FINDS** and **CONCLUDES** the following:

1. The existence of a custodial relationship between the Petitioner and the juvenile victim is supported by a sufficient factual basis; and

2. The indictment was sufficient under United States constitutional standards; and

3. The indictment was sufficient under West Virginia constitutional standards; and

4. The Petitioner's fifth ground for relief is without merit as the indictment meets both federal and state constitutional requirements.

**NOW, THEREFORE**, in consideration of the foregoing, the Court **DENIES** the relief sought by the Petitioner in his *Petition Under W.Va. Code § 53-4A-1 for a Writ of Habeas Corpus* and does hereby **SUMMARILY DISMISS** the above styled action.

-43-

The Clerk of this Court is directed to remove this matter from the Court's active docket.

The Clerk is further directed to send an attested copy of this *Order Summarily Denying And Dismissing Petition* to: **Clarenc** ⸲ Mount Olive Correctional Complex, One Mountainside Way, Mount Olive, WV 25185; and **David Ballard, Warden,** Mount Olive Correctional Complex, 1 Mountainside Way, Mount Olive, WV 25185

**ENTERED** this the 4ᵗᵏ day of March 2014.

_____
Judge Paul M. Blake, Jr.

**Attested Copies to.**
CPS / _____
DB / _____
_____ / _____
_____ / _____
Date: March 4, 2014
Initials: JRV

-44-

A TRUE COPY of an order entered
March 4, 2014
Teste: _____
Circuit Clerk Fayette County, WV